The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit.    All persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit are admonished to draw nigh and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. All right, be seated, please. The first case we'll hear this morning is Trimble v. Entrata and Ms. Santos. Thank you, Your Honor. May it please the Court. My name is Jamie Santos and I represent the appellant, Entrata, which runs Resident Portal. Resident Portal is a website and app that allows apartment tenants to communicate with their leasing office, submit maintenance requests, make online payments, or engage with their housing community. Ms. Trimble sued Entrata, claiming that Entrata unlawfully charged her a convenience fee when she decided to pay her rent on Resident Portal rather than giving a check to her landlord. Resident Portal, like most apps, is governed by terms of use and Section 14 of the terms is an arbitration clause that binds both Entrata and tenants to arbitrate any dispute arising out of tenants' use of the website. And the question here is whether that mutual agreement to arbitrate is rendered illusory by the fact that Section 3 of the terms says that the agreement may change from time to time. The answer to that question is no. Maryland law is clear that— That change from time to time sounds pretty illusory. Well, Your Honor, I think Maryland law is clear that an illusory promise is one in which there is no limitation whatsoever on the promisor's ability to renege on his past promise. And here, if you read the terms— You can change it without notice at any time and then go and assert a claim and your counterpart would never have seen it. I don't think that's right, Your Honor. I thought your argument was that you have a mechanism for seeing it, but it seems to me we have said pretty clearly that if you have a unilateral right to change the terms of the agreement without notice, that's illusory. Well, Your Honor, I think there are two things in this contract that make it particularly non-illusory. The first is that it's not retroactive. So the cases like Johnson and Cody and Cheek— Well, you know, it could be made retroactive. Whatever term you want. Entrata could say, we're now going to change this, and as a matter of fact, we're going to say from January 1. But that's not the real problem. The real problem is whether you agreed to anything, whether the other side agreed to  Well, Your Honor, I think if you look at the first sentence of Section 3, which is the change clause, it says that the tenant's bound by the agreement that's in effect on the date of their visit. And so even if Entrata goes and makes a change and, you know, completely eliminates the arbitration clause, that would apply going forward, but it wouldn't be retroactive. And then I think the second part that is a very clear limitation— I understand that. On April 1, you change it, and the client goes in on April 5 and didn't know it was changed and is now bound by it. Your Honor, the client would not be bound by something— Why not? Because you made the change April 1. Because, Your Honor, there's two things. So first, with transactions, Section 1 of the terms is very clear that for transactions that are conducted on Resident Portal, and that's the entirety of the claims here, they're only about transactions, a tenant has to agree to the terms every single time they engage in a transaction. And so they have to click— I understand, but when they go on to engage in that transaction, you made a change five days before that they didn't know about. And so they're agreeing something they didn't know about. Your Honor, that's not right because you have to—every time you engage in the transaction, you have to agree to the terms that are then in effect. You are not bound— I know, but you agreed to terms, but the point is that every time you go in, you're asking the client to compare those terms and conditions with the last month. Every month, you want them to go there, compare the conditions, and see if they've changed. Those terms and conditions, if you've read them as a practical matter, no one can compare the terms and conditions from last month. They're not even online anymore because you've changed them. So how are they going to know what has been changed? There's no case that the other side has cited, and I have not found any case that says that you have to provide a red line for a contract not to be an illusory. No, you have to provide notice to have an agreement. Exactly, Your Honor. In order to be any kind of an agreement, there has to be a consent, and to have consent there's got to be notice. You can't just spring it on them and say, oh, you're going to the transaction, and incidentally, we made a huge change there, and the client has to go, under your terms, has to go and compare the current terms with the last terms without any notice at all. Well, Your Honor, I'd like to make two points. The first is that, so Johnson and Cody said that notice and an opportunity to cancel would be sufficient to render a promise not illusory, but it didn't say that was a necessary condition, nor could it- How do you have consent without notice? Because every time someone engaged in an online transaction, every time they had to agree to the terms that were in effect. So they received notice. They had to click consent. They didn't have notice of the change. But Your Honor, they had notice of what the terms were, which means that they could not have been unilateral- Which is pretty tough when you have a monthly payment. You're paying rent every month, right, through this portal? Yes. And so it's an ongoing thing, so every month you click and pay it. Now, you're asking the client to go click and go read the terms and conditions to make sure there's been no change before they can agree to it. No, Your Honor. Because you have reserved the right to make a change at any time without notice. Your Honor, we're not asking the client to go and compare- For an agreement. For an agreement. We're asking the client to confirm or to explicitly assent to the terms that are in effect. And the Section 1 specifically says that a tenant has the right to not conduct electronic transactions in the future. They can always go and pay their- And we'll make a change and provide you notice, and if you continue to use our card after we receive our notice, you'll be bound. Well, Your Honor, I think that that's what Section- What's wrong with that? Nothing's wrong with that. I think that is exactly what Section 1 does for transactions. It says every time you engage in an online transaction, you have to assent to the terms- But you don't provide notice of changes. Your Honor, so there are cases that have required- I get the cases. Just tell me that as a matter of agreement, I mean, we're talking about contract law where two people come to my- agree and consent to some kind of a course. We're not having a gotcha arrangement. What you need is an arrangement where two people consent knowingly. And you've got a clause in here that says we can change it at any time without notice. And the question is, oh, you've got notice because you're told every time you use this, you're subject to the terms and conditions in effect at that point. That's your argument. No, Your Honor. My argument is that the clause says the terms may change from time to time. Every time someone engages in an online transaction, they have to specifically assent to the terms that are in effect then. They have an option and they are told specifically in Section 1. You can always decline to participate in an online transaction. Of course, but you're requesting it as an impractical matter to read the terms and conditions every single month. It may take them an hour to do that, more. The idea, every month, you have a month-to-month portal payment and you charge a fee for that. And they go and pay month-to-month. And you say, we can change the terms anytime without notice. You don't notify them. And then you got the situation where you have now and you say, oh, we got an agreement. You agreed to it because you didn't read every month the terms and conditions. But Your Honor, the law of illusory contracts in Maryland doesn't look at general kind of principles of unconscionability. Is this the most fair thing? No, Your Honor. The law of illusory contracts in Maryland, and this is described in Cheek, in Quest Our Builders, in all of the cases that we cite, it says that for a promise to not be illusory, there has to be some limitation, any limitation whatsoever on the promisor's ability to renege. And having to have somebody consent to the terms each time is a limitation. If Ms. Trimble went into arbitration, demanded arbitration now, and asked to arbitrate the payments that she made in 2023 and 2024, there is absolutely nothing Entrada could do to renege and avoid arbitration. It is bound by the agreements that she signed on those dates of those transactions. So I think, Your Honor, I take your point that you see these terms of use documents generally as unfair or one-sided. But that is not what the law of illusory promises looks at in Maryland. And there are also two really important principles of Maryland law that I think the district court didn't consider. The first is that Maryland law favors non-illusory readings of contracts. That's a kind of first-order principle of Maryland law. The second is that the, and this was discussed in Quest Our Builders, the implied covenant of good faith and fair dealing can supply an implicit limitation. So if Your Honor is worried about this seems kind of one-sided, the implied covenant would require Entrada to exercise its discretion in good faith and fairly. And it would require, for example, for transactions to provide notice and the opportunity to consent, which is exactly what this agreement provides. I really think, and I understand that Johnson and my friend has argued that the implied principles, the canon against illusory readings of contracts, they don't apply because they weren't part of Cody and Johnson. But Cody and Johnson were looking at very different questions. Cody was looking specifically, everyone agreed that the language in Cody created an illusory contract. The only question was whether that clause applied to the arbitration provision at issue. And in Johnson and the cases that followed, the only question was whether the change clause was illusory, but was it saved by this kind of generic notice as provided by law question. And it wasn't. And those cases did not discuss the implied covenant because it wasn't raised and because the language of those agreements were absolute detailed and unyielding. Our case has general language, much like the language used in Quest Our Builders and in the jukebox merit music systems case. It's general. It just says the terms may change from time to time. There's nothing that would be at odds with that type of language to see these limitations requiring affirmative consent each time. And in those cases, they have language like the absolute sole discretion can make any change at any time with or without notice, and those changes apply retroactively. There is no language like that in this contract. And so I think this falls squarely within the restatement, within the Quest Our Builders case, and within all of the other cases that recognize that if there's some limit on Intrada's ability to just pull out of arbitration after arbitration is filed, then it's not illusory. And those limits exist here. So are we to understand Section 3 as meaning that each time a client uses the site or engages in a transaction on the site, there's a new contract? It says you're bound by the version of the agreement that's in effect on the date of your visit. So if she visits the site on June 1st to pay her rent, she's bound by, and Intrada's bound by, the version on June 1st. And that version cannot be changed at any point in the future. Then if she visits again on July 1st to pay her rent and there's a new version, both she and Intrada are bound by that version, which cannot be changed for purposes of that transaction. Even though if she visits in the future, there might be a different version. It seems to me the suggestion here is that there's multiple, it's a different contract every transaction. And if she sues then about June and July, there might be different contracts that govern those transactions. Is that correct? That's exactly right, Your Honor. I think that's clear from the language of Section 3, the first sentence, but also from Section 1, which governs online transactions in particular, it says you are agreeing to the terms in effect by signing and clicking on the I agree to the terms and conditions box. And I think the reason why, so unlike the kind of employment contracts and credit card contracts cases, where there really is a continued contractual relationship that you actually have to cancel, going to a website like Intrada is like going to a store or going to a restaurant. Every time you go, it's a different encounter. You might have different terms, different prices, and a different agreement. Is there an application form that you have to sign when you enter in? No. When you start with Intrada to pay your monthly rent, what do you have to supply? You obviously have to supply the mortgagee's name, address, the amount, and so forth, don't you? So you can create a username and a password to go onto Intrada because you can do all kinds of things on Intrada. Do you give it an account number? I don't think it has an account number, no. It's just like if you're going on to Nordstrom.com and you're buying something. I'm trying to find out when you start with Intrada and I want you to pay my monthly rents, you're saying there's no document I have to fill out that creates an account? So there's no subscription service, right? Like I am subscribing to Intrada for this year and it costs X amount per month. You have an online account, meaning that you have a username and a password, and then you can go on each month and you can pay electronically, or you can choose to just go give your landlord a check or mail a check. But it's not this kind of continuing contract. So it's like a bill pay portal? Exactly. I assume the relationship is between Intrada and the landlord. Exactly. The continuing relationship is between the landlord and the tenant, and then between Intrada and the landlord. They'll decide whether to make the service available. But that's, I think, a really key distinction. It's not this ongoing relationship. And I think it makes a ton of sense that you have, I mean, these terms of use documents that say we may change this from time to time, they're not just normal, but they're necessary because when you have companies like Intrada that changes its product lines, there are regulatory changes, legal changes. It actually has to change. Well, those changes may be necessary, but my question is, I understand your argument and it sounds to me highly technical, but what you're expecting of the client is that every time you pay a bill, you expect them to continue paying the bill from month to month. You get a fee for that. And they expect to have that convenience from month to month to have that bill paid. So they go online and click and say pay it. And what happens is you don't tell them that from the last time you paid, we've changed our bill. Notice new terms or something like that. You don't put that in there. So there's a little bit of a gotcha. Not technically, because you point out that every time they have a transaction, they agree to the transaction as of that moment. But that transaction could have changed many times before the next transaction. And the common sense approach when somebody pays a bill from month to month, a rental bill, they don't want to have to send it in themselves. Your port will take care of it for them. And yet you now want them to go through the practice of reading the entire terms and conditions to see if they agree with them every time they pay. And that's got a gotcha aspect when you don't provide notice of the change. Your Honor, my answer I see my red light. Oh, please do. Thank you, Judge Niemeyer. So I think we expect that what they will do, they assent affirmatively through a click, that I agree to the terms and conditions. I understand that. I understand all the terms. I'm talking about this pragmatic aspect where people, how people agree to things. And you're suggesting that every time they go online on a month to month, they're going to pay this rent every month. And every time they go on, they have to read the entire terms and conditions under the contract that you've provided. You said we can change at any time. Just make sure you check. And so you provide a service and then they have to read how many pages of those terms and conditions. They're pretty tough, right? Yep. They're pretty long, Your Honor. And I don't doubt that. And I'm not disputing that. I think our point is that because the law of illusory contracts doesn't look to kind of general one-sidedness or burden or, you know, is this going to be difficult? It looks to whether there's a limit.  This, you know, Johnson was a case. I was on the Johnson case. Yes, Your Honor. And these cases are all a little difficult because online transactions are becoming more and more regular. And if we're going to have agreements connected with them, it seems to me we have to have some criteria as to how the meeting of the minds comes about. And I'm not sure all the inputs. This raises another twist, which is you require a new contract with respect to every transaction every month. You say, when you sign this one, read the terms and conditions. They may have changed. But you never notify them of the change, yet you provide a service which is an ongoing service. You say, no, it's not an ongoing service. It's like going one month to Home Depot and buying fertilizer. I mean, it's not that. It's a month-to-month. In a consumer's mind, it's a month-to-month payment of rent. And you're saying they have to go in and read the terms and conditions because technically that's what we told them to do. But do you think they understood that when there's been no notice of a change? Pragmatically, you're asking a lot, I think. Well, if I can provide any reassurance to you, Judge Niemeyer, I think it's this. I think the cases where this court and the Maryland courts have been the most concerned is when you have these clauses, like in Johnson, that says we have a unilateral power to make any change we want at any time without providing you notice. The second we decide to make a change, it automatically becomes effective. And then the clause in Johnson specifically says, at our option, we can apply this change back to your prior transactions to the beginning of the contractual relationship. This case is so much easier and less concerning because there's a different transaction every time, because there's consent that's required every time, and so you can't have a situation where there is no meeting of the minds. It may be that tenants decide not to read the terms, but they're expressly consenting that they did and that they understand them. And so I think the situation that you're positing kind of assumes that tenants are not truthful when they're expressly clicking the terms and conditions, that they understand it, and they always have the option to pay rent how I did my whole life, just by writing  Yeah, we've got a red light. So you've got some rebuttal time coming.  Thank you. All right. Why don't we hear from Mr. Carney? Good morning, Your Honors. May it please the Court. The District Court's decision below should be affirmed. Judge Bennett denied Entrada's attempt to compel arbitration here and to force the plaintiff to travel to Utah, the consumer plaintiff to travel to Utah to arbitrate in front of a commercial attorney. Well, that's not at issue here. What's at issue here is whether this clause is illusory. And Entrada's position is it's not illusory because there is a new contract formed every time they go online. It's not an ongoing thing. And technically, it seems to me, the arrangement seems to be that. That you go on with a single transaction to pay rent, and it says, look at our terms and  You have to click through to see it. So there's no issue about whether it's a voluntary click. You have to go through the terms and conditions. The question is, in my mind, is how do you get the term, this agreement may be changed from time to time. How does that become illusory when the transaction that you're engaging in is already fixed? Well, Your Honor, first of all, the transaction that they're engaging in is not necessarily fixed. It is, in fact, an ongoing relationship. Well, how do you establish that? What establishes that? Well, Your Honor, there's a requirement in the contract, in the terms, that the resident that's paying rent check the site for notices. And notices are defined to include things like subpoenas and legal process. They say that if a notice is posted on the website, the consumer is deemed to have received it. And, in fact, the terms require the consumer to visit the website. The terms say you must check the website for notices. Are the websites unique to each customer? No, Your Honor. This is the terms that apply to everybody. I mean, is the customer given an account number? When you sign up with Intrada, is it a single transaction by single transaction? Or is it an ongoing arrangement? Well, Your Honor, like you observed, this is an ongoing arrangement. This is the payment of rent. Well, I observed it non-critically. Yes, Your Honor. The question is, legally, is it an ongoing arrangement? Do they get an account number signed to them? I don't believe that there is anything in the record that talks about that, Your Honor. And I don't think there's anything in the record that speaks to the other facts that my learned counsel on the other side talked about. Is there anything in the record about how the plaintiff paid her rent between the complaint talks about payments in maybe July and August of 2023 and then February of 2024? I didn't see anything about this sort of ongoing relationship of, you know, every month I'm going to pay my rent. And in addition to that, that it's an ongoing relationship established by a contract. Well, Your Honor, if you look at Joint Appendix 66, for example. I'm sorry. Yes, Joint Appendix 66. Footnote 6, this is Intrada's motion to compel arbitration. And they list out the payment dates. And there's, you know, repeated payment dates. And those are all prior to October 2024. So this is the list of all of the times, all of the subject transactions. Yeah, it's just there's kind of a factual problem and a legal problem. The legal problem is more important, right? Does the contract create a continuing relationship? Or is it, you know, a new contract for every transaction? And then you have a factual problem that if you're going to hypothesize a continuing relationship based on the idea that someone pays their rent every month through this portal, she didn't pay her rent every month through this portal. There's a gap between August and February, right? Yes, Your Honor. So she wasn't required to use this site. She could pay it other ways. I don't think that there is anything in the records showing that she's required to use the site to pay the rent. She didn't breach the contract by not paying her rent through this site in December. No, Your Honor. But there is the requirement to check the site for notices. Yeah, because that's where the notices are. It's like saying, read the newspaper if you want to know about real estate transactions. In a way, but the newspaper, for example, has a date on it. And it has, you know, specific, I mean, it has the date. And there's nothing in the changes that Intrada provided on the terms that has a date. There's nothing even that suggests that the terms change. Well, that's because it's a new contract, right? Every time a consumer enters a contract, we expect them to read it. Or we pretend like they read it, right? It's a new contract. It's not, why would they have to say, here's all the changes we made since the last version of this contract we created. Well, because again, Your Honor, they require Ms. Trimble to visit the site. So it's not just the one, it's not just the payment. The contract is not just the payment. The contract also includes the obligation of Ms. Trimble to check the site for notices in the future. How do they enforce that obligation? How do they enforce the obligation? Yeah, you're hypothesizing that there's an ongoing obligation to regularly visit this website. And if she doesn't, what happens? Well, then she breaches the contract. Really? Where's that? Is there a breach clause that tells me that if you don't visit the website, it's a breach? Well, it's just, Your Honor, it's just based on the fact that the contract says you must visit the site to check for notices. And so by not doing that, that's violating that specific term. But the thing is that if we look at these rental payments, and they all predate October 2024, and then if we go to JA-64, which is a couple of pages earlier in their motion to compel arbitration, the terms that they cite post-date all of the transactions in the record. So this idea that the contract or the terms that they're focusing on are the terms for each payment doesn't jive with what they told the district court. They cited the October 16, 2024 version of the terms to support their motion when that post-dates all of the transactions in the record. And so it just doesn't make any sense that this is, their argument that this is a, you know, one-time deal, that just paying the rent and the contract is over. Because what they're trying to do is impose the terms in the October 2024 agreement to all of the prior transactions. So that also undermines the argument that it's... Judge Rushing's questions, you should be focusing on the agreement, and there are suggestions in the agreement that this is an ongoing subscription. They talk about all this, they talk about licensing, they talk about ongoing transactions, they talk about ongoing services, and those types of things seem to be something you should have focused on if you're going to establish an ongoing relationship. Yes, Your Honor, and this is absolutely true. For example, in Section 15.5, there's a request to change personally identifiable information, which suggests an ongoing contract. But what about the contract suggests that changes would be retroactive? Well, again, Your Honor, the fact that Entrata used the October 2024 terms... No, but that might have been wrong. They may have been wrong to do so. What about the contract lets them make retroactive changes? Well, there's nothing in the contract that prohibits retroactive changes. Is there anything that allows retroactive changes? Yes, Your Honor. The clause that says that the agreement may change from time to time. Well, that doesn't say that it's retroactive or when it applies. It says you're bound by the version that's in effect on the date you visit. Yes, Your Honor. We may change it in the future. Oh, but it doesn't say that. Then you'll be bound by the version that's in effect on the date you visit in the future. And if it had said that, that might be slightly different, but as Your Honor... I think I read it. You're bound by the version of the agreement that's in effect on the date of your visit. Yes, but it doesn't say that in the future. Did I misunderstand you earlier? Didn't you say that Appellee is trying to impose terms that post-date the payments? Yes, Your Honor. So that itself is an example of they are applying it retroactively. Correct, Your Honor. Yes, Your Honor. And so just to turn back to Judge Ressing's question, the fact that they can change the agreement from time to time means that they could change the agreement to include retroactive changes, like we were just discussing. And they are. It just illustrates. They could be wrong, but it's illustrating the problem. Not to stick to the contract, but then for all future transactions, they could make retroactive changes. In all future transactions? Right, yeah. But changing it to be able to make retroactive changes still doesn't say, as of today, our changes are retroactive. They still can't touch the version that was in effect last year because that version didn't allow them to change it. It's a prospective retroactive clause. I understand your point. I think, Your Honor. I mean, it's very confusing because especially the way that Entrata has employed this because number one, they can change it at any time. The clause says the agreement may change from time to time and you're bound by the version that's in effect on the date of your visit. And so that's kind of like, I mean, there is a little bit of a tension between those two statements. It's like with one hand giving, the other hand takes away. And at best, I think that creates an ambiguity. And under the Dumais case and the Chief's adoption of Dumais, any ambiguity goes against the drafter of the arbitration agreement. When it comes to the course of conduct, you haven't made an argument that this agreement, that we should look outside the four corners and interpret it as what Entrata has, you know, what they've actually done, right? You were pointing out that they're trying to enforce something retroactively. But you haven't argued we should use a course of conduct to interpret the agreement, have you? No, Your Honor. It just is an illustration. It just illustrates the problem. The other issue, I think, that remains, even if this is not an illusory unilateral change clause, even assuming that the change clause is not illusory, there's still the remaining problem that Entrata removed any opportunity from Ms. Trimble to require arbitration. The contract says that any claims, including under the law of contract, are waived. And of course, the only way to compel arbitration is to file a claim. That's what we have here. Entrata filed a claim to arbitrate. Now, of course, Entrata did not waive any of its claims. But these terms purport to waive any claim of any sort by Ms. Trimble, which means that she couldn't require them to arbitrate. She couldn't file a claim to compel arbitration.  and I know the district court didn't decide this issue, I found it tricky but that you add in place of what was severed, you're adding terms from other agreements. I didn't see much argument by the parties on severability, but what's your position on that clause? Thank you, Judge Russell. My position is that that's really a rewrite the contract clause. It's not a severability clause. It says that if something in the contract doesn't work, then it has to be rewritten. And that's not a severability clause for unilaterally rewriting the contract in that way. If anything, it simply supports the idea that this is an illusory contract. It can be rewritten at any time. Entrata purports to maintain the ability to replace offensive clauses. Severability is not usually considered an illusory, doesn't create problems of illusory contracts, right? Right. But here, the clause that's at issue to replace, it says, if any part of these terms is determined to be invalid or unenforceable, then the invalid or unenforceable provision will be deemed superseded. Deemed superseded. By whom? It doesn't say. Deemed superseded by a valid enforceable provision. And who's to determine that? And the remainder of the agreement will continue in effect. I have no idea what the contract is. A valid provision that most closely matches the intent of the original provision, right? Yes, you are. As though a court is going to blue pencil it or something, right? But then that's either the court or a party rewriting it. It doesn't provide any procedure for this to happen. It just states it as a fait accompli. Right. And so it's just very vague. And so for those reasons, the district court decided the issue correctly. Framed the issue correctly. This is a question about whether an arbitration agreement was formed. And as the court held in Cody, it's only the language that's actually expressed in the contract that controls. And where the drafter can change the contract without notice, it's illusory. And that's exactly what can happen here. That's exactly what did happen here. Entrata changed the agreement by their own admission, secretly three times in one year without telling the plaintiff or anybody else, you know, in public, that it was changed. Again, no revision dates, no suggestion as to what it changed, but it was important. Again, this is just an illustration, but Entrata added plaintiff's landlord who could force her to arbitrate. Is there a document called application for the services? There's nothing in the record about that, Your Honor. Well, there is in the contract. I mean, they're talking about that Entrata reserves the right to verify all information in your application. I apologize, Your Honor. You are correct. So there is an application and that's what I, in other words, to me, one of the big questions in this case is whether this is an ongoing relationship or isolated trips to the Home Depot to buy fertilizer when you need it. And I, it seems to me I'm looking at this agreement, it envisions a long-term agreement, ongoing agreement like a credit card agreement. You can terminate a credit card agreement at any time, but it's ongoing until you do. And this isn't, I don't know if this is ongoing until you do, but there are a lot of indications in this agreement that talk about licensing and information and checking on your credit reports and you have to tell us differences and this type of thing, provide information. And I'm not sure you've gone through and given us all the indicia about that. Well, Your Honor, Ms. Santos, for example, spelled out some of the things that are part of the ongoing relationship that Entrata uses this portal for a lot more things than just collecting rent. In terms of termination, with a credit card agreement, sometimes there's an ability to terminate that. Here, there is no ability for the resident to terminate. When you say they use it for other things, is the service they provide include notices of subpoenas and this type of thing? Where are the services, list of services that Entrata provides? Is that anywhere? Well, there's a license to use the site, so that's one of the services is that they're allowing the use of the site. I do not believe that this lists out every single service. It doesn't provide any list of services. Well, there is a list of the Entrata text message system terms. This is part of the same agreement. So, if you are a resident, this is JA-104, if you are a resident of the property client sending you text messages, you get all notifications from within Resident Portal. So, part of the Resident Portal services include ongoing text messages, and they have a list of the keywords that you can use. Ticket updates, this is JA-105. These would be for repairs to the apartment. If you have opted for text messaging updates while creating a support ticket, you have the following commands, and it lists out commands. Then it talks about in the FAQs, you're saying the landlord can use Entrata service to text its renters notices. That's what it's saying. That's not what I was suggesting. The way that I read this, it says residents on JA-104, that the property client can send text messages, and you can manage those text messages. So, yes, the property client is sending the text messages. The property client is the landlord, right? Yes, correct. It hires Entrata to be its text messaging service to send notices about the apartments to the renters. Correct. Yes, and the renters are able to manage those messages. Right, they can say stop, things like that. Correct, and then on the next page, it talks about how did I get subscribed to your service? It says there are two ways you can opt into our services. One is via the web on a form. The second is by texting a keyword. And so this contemplates a subscription and ongoing service. All right. Thank you. I think your time is up. And unless there are any further questions, I believe my time is up. Ms. Santos. Thank you. Thank you, Your Honor. There are five points I'd like to try to make. The first is my friend suggested that we were trying to retroactively impose the October 2024 terms on all of the transactions. That's not at all true. We cite in our brief, in both of our briefs, all of the relevant pages for Section 1 and Section 3. They did not change in any way throughout any of these versions. So we cite Section 1 is JA89, 110, 130. It's exactly the same. 130, 111, 131. So we are applying the terms that apply to each transaction, the terms that were in effect on the date of each transaction. Second, my friend argued that as to kind of the retroactivity questions that Judge Rushing posed, he said, well, there's nothing in the agreement that rules out a retroactive application. There's nothing in the agreement that rules out a unilateral change. And so under the contra proferentum canon, you should basically read the contract as unfairly as humanly possible toward the non-drafter to render it illusory. That is not contra proferentum. I've never seen any Maryland case or any Fourth Circuit case that applies it in that type of way. What it's used to do is to read terms more fairly towards the non-drafter. And that type of kind of formulation of contra proferentum would be completely at odds with Maryland law that says we prefer non-illusory ratings of contracts. The third point is on the prospective waiver. I think, Judge Rushing, we didn't speak a ton about severability because I think it's pretty clear that this case is unlike Hengel and the cases my friend invoked. But I don't think you even have to get to severability because under the Supreme Court's decision in Rent-a-Center, the Supreme Court held squarely that when you're not challenging the delegation to the arbitrator as invalid or unenforceable, and instead you're challenging some other provision as invalid or unenforceable, that is not a reason not to send the case to arbitration. That might be something the arbitrator could look at to say, oh, there's this prospective waiver. Does that render the contract unenforceable as a whole? But it's no reason to not send the case to arbitration. The fourth point- Let me ask you, why would you put that change clause in a transaction about this agreement made with change if every transaction is an individualized agreement? You wouldn't need that if all you'd have to do is attach the terms and conditions. Change wouldn't mean anything. Because it's to give the tenants a heads up that when they come on and they use the website on different occasions, that there may be different terms. But it doesn't matter because when they go on each occasion under your theory, they'll look at the terms or they have the opportunity to look at the terms that govern that transaction. And whether it's changed or not doesn't matter because they're individualized transactions. What I'm suggesting is I was just looking, glancing through the agreement a little more here, and you talk about application for services, ongoing relationships, supplying information. It looks like you use the word application, you use the ongoing services type of thing. It looks like you want an ongoing relationship and that the reason you're putting that clause in is you're assuming that the transaction, the terms and conditions are going to govern that relationship and reserving the right to make changes to it. If you were taking the position as a company that every single transaction is an isolated transaction, there would be absolutely no reason to put that clause in. I disagree, Your Honor. I think that giving the tenant more information that they should take... I assume they knew what it was. What if the first tenant comes on? I mean, the first person that comes on, you have terms and conditions, they can read it. The person goes on a month later and you say that's a new contract, the terms and conditions are right there, they can read it. Change is no... You have to assume they're relying on something pre-existing to talk about change. I think it's... And if you assume they're relying on something pre-existing, then there's an assumed ongoing relationship. So let me make two points. One about the ongoing relationship and one about why you have this language. On the ongoing relationship, I think it's absolutely correct that Entrata assumes there will be ongoing use of the website because people live in an apartment for a year, two years, three years. So they might use the website on all kinds of occasions, but that doesn't mean that there is an... It's not like a Netflix subscription. Is it like a credit card agreement? No. Why not? Because a credit card agreement, you sign, you have this ongoing balance. You have payments that are... You don't have to. You can do one payment a month and you can quit at any time and you can restart at any time. This would be less like a credit card agreement and more like a rechargeable Visa gift card where you can use it. So every month, Miss Trimble used it on five occasions, but not all of them or six occasions. So it means that she paid her rent by check or by cash in some months and not others. And so you'll have an ongoing use, but it's not a subscription that you actually have to cancel. There's nothing to cancel. Describe this email services. Tell me what those are. The landlord often will send emails out to tenants just like they send text messages out to tenants. I mean, there's all kinds of services that you can get on Resident Portal. You can reserve like a pavilion for a birthday party. You can leave reviews for apartments. You can read reviews for other apartments. So it's a kind of general service platform. One of the services is that you can do online transactions and for online transactions in particular, there's this whole section that tells you what binds you when it comes to online transactions and it says you have to consent each time and if you don't like the terms on a future occasion, you can just decline to participate. Thank you, Your Honor. Thank you. All right. It's been an interesting discussion with both of you. We'll come down and greet counsel and proceed on to the next case.
judges: Paul V. Niemeyer, Stephanie D. Thacker, Allison J. Rushing